**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE**

**CIVIL ACTION NO. 06-70-DLB**

**SONNY J. MULLINS**                                                                                           **PLAINTIFF**


**vs.**                             **MEMORANDUM OPINION & ORDER**


**MICHAEL J. ASTRUE, Commissioner
SOCIAL SECURITY ADMINISTRATION**                                                    **DEFENDANT**

******************

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security.[1] The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Sonny J. Mullins filed applications for a period of disability, disability insurance benefits (DIB), and supplemental security income (SSI) payments on April 17, 2003. His applications were denied initially and upon reconsideration. Plaintiff requested a hearing before an administrative law judge (ALJ), which was held by video teleconference on December 6, 2004 in Hazard, Kentucky. On April 21, 2005, ALJ Roger Reynolds issued a denial decision, finding that Plaintiff was not disabled. The Appeals Council denied

---

[1] Although Jo Anne Barnhart was the Commissioner of the Social Security Administration when the complaint was filed, she has been replaced by Michael J. Astrue.

1

Plaintiff's request for further review, therefore, the ALJ's decision stands as the final decision of the Commissioner on Plaintiff's claims.

Plaintiff, who was 46 years old at the time of the ALJ's decision, has an eleventh grade education and past relevant work experience as a mine operator. Plaintiff alleged an inability to work beginning on June 25, 2002 due to black lung disease, hearing problems, headaches, and numbness in his right arm, leg, and shoulder. At the hearing before the ALJ, Plaintiff also indicated that he is disabled due to back and neck pain, anxiety, and depression. After reviewing and evaluating the evidence, the ALJ found Plaintiff had the residual functional capacity (RFC) to perform a wide range of medium work, which was based on the testimony of a vocational expert who testified at the hearing. Consequently, Plaintiff was found not to be disabled pursuant to the Act.

Having exhausted his administrative remedies, Plaintiff filed the instant suit on March 27, 2006. The matter has culminated in cross motions for summary judgment, which are now ripe for the Court's review.

## II. DISCUSSION

**A.  Overview of the Process**

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Secretary,* 25 F.3d 284, 286 (6th Cir. 1994). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (internal quotes and citations omitted). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* If substantial evidence supports the Commissioner's decision, the Court will defer to that finding "even if there is substantial evidence in the record that would have supported the opposite conclusion." *Warner v. Commissioner,* 375 F.3d 387, 390 (6th Cir. 1999) (citation omitted).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Commissioner,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Secretary,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 25). At Step 2, the ALJ found that Plaintiff suffered from several severe impairments including: depression, NOS, rule out substance disorder; anxiety, NOS, rule out substance induced mood disorder; polysubstance dependency and alcohol abuse, in remission by history; chronic neck and low back pain secondary to degenerative disc disease; knee pain status-post arthroscopic surgery; and chronic obstructive pulmonary disease (COPD) secondary to nicotine and marijuana abuse. (*Id.*) At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of

impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.  (*Id.* at 26)

At Step 4, the ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform a wide range medium level work, that is –

> lifting/carrying/pushing/pulling 50 pounds occasionally and 25 pounds frequently; standing/walking 6 hours in an 8 hour workday; sitting 6 hours in an 8 hour workday; occasional bending, twisting, stooping, kneeling, crouching, and crawling; no climbing of ladders, ropes, or scaffolds; no operation of foot pedal controls; no work at heights, around industrial hazards, concentrated vibration, or concentrated dust, gases, fumes, chemicals, temperature extremes, or excess humidity.

(*Id.* at 31)  As for limitations resulting from Plaintiff's mental impairments, the ALJ assessed the following non-exertional limitations –

> requires simple work with no frequent changes in work routines, no problem solving, no independent planning, no setting of goals, and no fast paced assembly lines; and requires work primarily with objects as opposed to people with only occasional interaction with the general public, co-workers, or supervisors.

(*Id.*)  Based upon that RFC, the ALJ concluded at Step 4 that Plaintiff was unable to perform any of his past relevant work as a mine operator.  (*Id.*).

At Step 5, the ALJ found that there are a significant number of medium, light, and sedentary jobs Plaintiff could perform despite his limitations.  (*Id.* at 32) These jobs included bus boy, a medium unskilled job, laundry worker, a light unskilled job, a deli cutter/slicer, a light unskilled job, and a security monitor, a sedentary unskilled job.  (*Id.*) This conclusion resulted from testimony by a vocational expert ("VE"), in response to a hypothetical question assuming an individual of Plaintiff's age, education, past relevant work experience, and RFC.

**C.    Analysis**

In this appeal, Plaintiff challenges the ALJ's determination on three grounds. First, he argues that the ALJ failed to find that certain impairments were severe, including Plaintiff's hearing, headaches, and diffuse hypothesia in his right hand. Plaintiff also argues that the ALJ improperly assessed his subjective allegations of pain. Lastly, Plaintiff challenges the ALJ's mental residual functional capacity and reliance on non-examining psychologists (Drs. Brake and Ross) instead of a consultative examiner (Dr. Lamb). However, none of these points amounts to reversible error.

In his application, Plaintiff alleged an inability to work beginning on June 25, 2002 due to black lung disease, hearing problems, headaches and numbness in his right arm, right leg, and right shoulder (Tr. 73-74). Upon reviewing the record, while the ALJ found that Plaintiff suffered from several severe physical impairments related to his neck, back, knee and COPD, he did not find that Plaintiff's hearing, headaches, and diffuse hypothesia were severe impairments. After conducting its own thorough review of the record, the Court does not find the ALJ decision regarding severe impairments to be reversible error.

In *Salmi v. Secretary*, 774 F.2d 685 (6th Cir. 1985), the Sixth Circuit held that an impairment qualifies as "non-severe" only if it "would not affect the claimant's ability to work," regardless of the claimant's age, education, or prior work experience. *Id.* at 691-92; *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c). The prevailing view, then, is that only slight abnormalities that minimally affect a claimant's ability to work can be considered non-severe. *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988); *Farris v. Secretary,* 773 F.2d 85, 90 (6th Cir. 1985). Using this framework, the Court reviews those impairments Plaintiff alleges the ALJ should have found to be severe.

5

With respect to Plaintiff's alleged hearing impairment, the ALJ observed no evidence to support this allegation. (Tr. 26). While there are two references in the record (November 14 and December 3, 2001) where decreased hearing in Plaintiff's left ear was noted (Tr. 123, 125), those same records do not establish the degree of Plaintiff's alleged hearing loss. In fact, the bulk of those records involve Plaintiff's back and neck problems and his possible treatment options going forward.

In discussing Plaintiff's alleged hearing impairment, the ALJ noted that Dr. Bobby Kidd observed that on August 6, 2003, Plaintiff could hear and understand conversational voices without difficulty (Tr. 151). In view of the lack of objective evidence documenting Plaintiff's hearing impairment, and the lack of any record limitations stemming from Plaintiff's alleged hearing loss, the ALJ's decision regarding the severity of such an impairment is not erroneous. Despite the relatively low threshold for "severity" within the Sixth Circuit, the two reports (Tr. 123, 125), standing alone, were not sufficient to establish that a severe hearing impairment existed. Because Plaintiff did not provide sufficient evidence of a hearing impairment, the ALJ properly found that plaintiff did not suffer from such medically determinable impairment (Tr. 26). Accordingly, there were no associated limitations in which to include in the RFC finding.

With respect to Plaintiff's alleged headache impairment, the record supports the ALJ's decision, both from an evidentiary and durational standpoint. In support of his argument, Plaintiff primarily points to office notes from Dr. William Collins from January-April, 2004 which identify "HA" under the assessment section. (Tr. 211-216) Although Plaintiff points to these records to support his argument that they evidence an impairment due to his headaches, a closer review of the records reveals otherwise. First, Plaintiff's

primary purpose for seeing Dr. Collins was to receive refills of his back pain medications and treatment for his facial acne. Second, although headaches were noted, Dr. Collins did not prescribe any medications due to that assessment.

The basis for the ALJ's decision regarding Plaintiff's headaches is also supported from a durational standpoint. The social security regulations state that in order to satisfy the "duration requirement," the impairment must be "expected to result in death" or "last [ ] or [be] expected to last for a *continuous* period of at least 12 months." See 20 C.F.R. §§ 404.1509, 416.909. In this case, as noted by the ALJ, even if Dr. Collins' office notes were substantial enough to establish a medically determinable impairment due to Plaintiff's headaches, the lack of corroborating evidence or further diagnosis from the doctor render the diagnosis incapable of satisfying the durational requirement for severe impairments. (Tr. 26). Plaintiff's citation to one reference to headaches (Tr. 244-45), from July, 2002, approximately 21 months prior to Dr. Collins' office notes, is insufficient to satisfy the durational requirement. The regulations require a *continuous* period of at least 12 months, which is not evident from the record. Moreover, despite the ALJ's finding that Plaintiff's headaches were non-severe, the limitations resulting from his headaches were considered by the ALJ in making his RFC determination (Tr. 27). Under these circumstances, there is no error, reversible or otherwise, in the ALJ's decision that Plaintiff's headaches were not a severe impairment.

With respect to Plaintiff's alleged severe impairment relating to Dr. Sharma's finding of diffuse hypothesia in Plaintiff's right hand, the Court finds no error warranting reversal. Although Dr. Sharma's findings corroborated Plaintiff's allegation of right upper extremity numbness, those findings were insufficient, standing alone, to satisfy the durational

requirement of severe impairments. (Tr. 26, 177). As noted by the ALJ, no other evidence of record corroborated Plaintiff's allegation of right upper extremity numbness (Tr. 26). To the contrary, and as noted by the ALJ, Dr. Kidd found Plaintiff's upper extremities to be of normal strength, tone, and dexterity except for an inability to flex his fifth finger on his left hand (Tr. 26, 152).

In his motion, Plaintiff asserts that the ALJ mischaracterized the evidence because he ignored the fact that Dr. Kidd's examination revealed a right hand grip strength of 16 KGF, as opposed to 48 KGF on the left hand, utilizing an odynometer. Because Plaintiff is right-handed, Plaintiff states that this omission was significant. Although it is true that the ALJ did not discuss the disparity in the grip strength noted by Dr. Kidd in his decision, Dr. Kidd did note that Plaintiff was able to write and pickup coins with either hand without difficulty (Tr. 152). Under these circumstances, the ALJ's omission was not significant and there was no error in the ALJ's decision that Plaintiff did not have a severe impairment involving his right hand.

It is well-settled that credibility determinations related to a claimant's subjective pain complaints rest with the ALJ. *Siterlet v. Secretary.,* 823 F.2d 918, 920 (6th Cir. 1987) (per curiam). In this case, Plaintiff argues that his neck and back pain can be attributed to objective, verifiable underlying conditions that could reasonably be expected to cause the pain and symptoms he alleges. For that reason, Plaintiff challenges the ALJ's decision regarding his pain complaints.

In determining whether a claimant is disabled, the Commissioner considers all symptoms, including pain, and the extent to which those symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. *See* 20

C.F.R. §§ 404.1529(a), 416.929(a).  In evaluating a claimant's pain complaints, the Commissioner must consider objective medical evidence and information from the claimant and treating or examining physicians, as well as other factors such as evidence of daily activities, the frequency and intensity of pain, any precipitating and aggravating factors, medication taken and any resulting side effects, and any other measures taken to alleviate the claimant's pain. 20 C.F.R. §§ 404.1529(c)(2), (3), 416.929(c)(2), (3); *Walters v. Commissioner*, 127 F.3d 525 (6th Cir. 1997).

In this case, a thorough review of record reveals that the ALJ properly found that Plaintiff's allegations regarding his neck and back pain were not completely credible. Although the record does reflect that Plaintiff's conditions are certainly capable of causing pain and discomfort, the objective findings in the record do not support the pain allegations and other symptomatology of a disabling nature as alleged by Plaintiff.  In that regard, the ALJ noted that while the evidence does establish degenerative disc disease, the record also includes physical examinations reflecting an essentially normal physical condition (Tr. 28).  During his August 2, 2003 examination, Dr. Kidd observed an essentially normal individual, noting only an occasional limp (Tr. 28, 151).  Otherwise, his gait was not unsteady, lurching, or unpredictable (Tr. 151). Nor did Plaintiff require the use of an ambulatory aid (Tr. 151).  Moreover, during that examination, Plaintiff appeared stable at station and comfortable in the supine and sitting positions (Tr. 151). The ALJ also pointed to the findings of Dr. Hughes Helm in his June 2004 report (Tr. 28, 276) wherein he reported that since taking Vicoprofen in May 2004, Plaintiff had experienced "significant" improvement in his back pain.  (Tr. 28, 257, 276).

9

While recognizing Plaintiff's conditions were capable of producing some pain and discomfort, the ALJ found that the severity of Plaintiff's allegations were at odds with the weight of the evidence and that the medical evidence revealed a pattern of drug seeking behavior and an unwillingness to follow through with recommended treatment. (Tr. 29) Upon review of the record, which included Plaintiff's medical history, medical signs, laboratory findings, Plaintiff's testimony, physician documentation, medications, and daily activities, the Court finds there is substantial evidence to support the ALJ's findings related to the credibility to be given to Plaintiff's evidence on the severity of pain and limitations therefrom. At pages 25-29 of his decision, the ALJ explained his reasoning for reaching his conclusions as to the level of credibility given to Plaintiff's pain complaints, and the Court finds no basis to second guess that reasoning. *Gooch v. Secretary,* 833 F.2d 589, 592 (6th Cir. 1987) (per curiam), *cert. denied,* 484 U.S. 1075 (1988) (even in those circumstances where there are discrepancies between what the claimant said and what the written record shows, a reviewing court should not substitute its credibility findings for that of the ALJ).

Plaintiff's final issue presented in this appeal is that the ALJ failed to give proper weight to the opinions and limitations assessed by the consultative examiner, Stephen Lamb, M.D., and the state agency psychologists, Drs. Jane Brake and Edward Ross. The Commissioner argues that because none of these sources are treating physicians, their opinions and limitations were not required to be given controlling weight by the ALJ. The Commissioner also argues that the ALJ gave appropriate consideration of all of the evidence in record, medical and non-medical, in making his mental RFC finding.

In this case, Plaintiff was examined in June, 2003 by consultative examiner Dr. Stephen Lamb (Tr. 127-130). During that examination, Dr. Lamb observed that Plaintiff's general attitude toward the evaluation and affect were angry, his speech was monotone, his mood was depressed, but his thought processes were logical. (*Id.* at 127) Plaintiff was oriented to place, person, time, and situation and his memory seemed intact. (*Id.*) During the evaluation Plaintiff denied ever having a pattern of being late for work or not following the rules of work. (*Id.* at 128) Plaintiff also denied having interpersonal difficulties with supervisors or co-workers. (*Id.*) Based upon his examination, Dr. Lamb diagnosed Plaintiff with adjustment disorder with mixed emotional features, severe, and a GAF score of 30/40. (*Id.*) Dr. Lamb provided a medical source statement on Plaintiff's mental ability (*Id.* at 129).[2]

Later that same year, in August and November 2003, state agency psychologists, Drs. Brake and Ross, reviewed the evidence in the record including Dr. Lamb's report, and completed psychiatric review technique forms (PRTF) and mental RFC assessments. (Tr. 131-149 (Brake), 178-196 (Ross)). In her functional capacity assessment, Dr. Brake specifically did not adopt Dr. Lamb's assessment because she found it was inconsistent with the longitudinal evidence or the diagnosis of adjustment disorder (Tr. 147). She also felt that Dr. Lamb's opinion appeared to be influenced by the pain issue (*Id.*) Dr. Brake further stated that Plaintiff could understand and recall material, concentrate and persist

---

[2] A medical source statement is evidence that is submitted to the Social Security Administration by an individual's medical source reflecting the source's opinion based on his or her own knowledge, not an RFC finding. *See* SSR 96-5p, 61 Fed. Reg. at 34473.

for simple tasks of interest to him, function in an object-focused setting, and adapt to routine changes (*Id.*)

In November, 2003, Dr. Ross affirmed Dr. Brake's opinion (Tr. 194). Both psychologists opined that Plaintiff had mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation (Tr. 141, 188). They further assessed Plaintiff as moderately limited in his ability to maintain attention and concentration for extended periods; to work in coordination with or proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and to respond appropriately to changes in work setting (Tr.145-146, 192-193). In considering these assessments, the ALJ simply determined that Drs. Brake and Ross' opinions in particular were more consistent with the case record as a whole than were those of Dr. Lamb. (Tr. 25)

It is the function of an ALJ to evaluate a claim based upon the record compiled in connection with an application. *See* 20 C.F.R. §§ 404.1520 and 416.920. This includes evaluating medical proof. *Id.* at §§ 404.1527 and 416.927; *Webb v. Commissioner,* 368 F.3d 629, 633 (6th Cir. 2004) ("ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [ ] residual functional capacity")(internal quotation omitted). It is the ALJ's responsibility to weigh the medical evidence if conflicting medical opinions have been presented. *See McCann v.*

*Califano,* 621 F.2d 829, 832 (6th Cir. 1980); *Ziegler v. Sullivan,* 894 F.2d 1337, 1990 WL 6954, at *4 (6th Cir.)(unpublished table decision) In that regard, the Sixth Circuit has recognized the propriety of relying on evidence deduced from non-examining sources, such as Drs. Brake and Ross herein, whose conclusions are based on objective medical reports. *See Atterberry v. Secretary*, 871 F.2d 567, 571 (6th Cir. 1989).

In this case, after considering the objective evidence provided by the medical sources, the ALJ evaluated evidence of Plaintiff's mental impairments based on the degree of limitation imposed in the following areas: restriction of activities of daily living; difficulty in maintaining social functioning; difficulty in maintaining concentration, persistence, or pace; and repeated episodes of decompensation each of extended duration (See Tr. 26-27), *see* 20 C.F.R. §§ 404.1520a, 416.920a.  Upon conducting this evaluation, the ALJ found that the evidence did not reflect 1) "marked" limitations to Plaintiff's daily living activities, social functioning, or ability to maintain attention and concentration, 2) episodes of decompensation or the possibility of future episodes of decompensation, 3) the inability to function outside of a highly supportive living arrangement or the area of Plaintiff's home, or 4) qualifying IQ scores before age 22 (*Id.* at 26). Specifically, the ALJ remarked that the evaluation of Dr. Lamb, as corroborated by the opinions of Drs. Brake and Ross, supported a finding that Plaintiff's "B" criteria was less than "marked" (*Id.* at 27).  The ALJ also noted that Plaintiff reported that his daily activities included watching television and visiting with friends and family and he also likes to hunt (Tr. 27, 317).  While he did not perform heavy household chores, Plaintiff admitted that he picks up after himself (Tr. 27, 316). Considering Plaintiff's testimony, the ALJ determined that Plaintiff carried on normal activities during a routine day, interacted appropriately with individuals, and displayed little

13

interference with his ability to sustain concentration, persistence, or pace when he so desires (Tr. 27). Based upon his consideration of the mental RFC assessments provided by Drs. Brake and Ross and Plaintiff's testimony, the ALJ determined that Plaintiff was limited to simple work with objects as opposed to people with occasional interaction with the general public, co-workers or supervisors with no frequent changes in work routines, no problem solving, no independent planning, no setting of goals, and no fast paced assembly lines (Tr. 28).

As stated by the Commissioner, even if the Court may disagree with the ALJ's resolution of the Plaintiff's mental RFC, where substantial evidence in the record as a whole supports the ALJ's decision, it must be affirmed, even if the Court would have decided the case differently. *See Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *Tyra v. Secretary*, 896 F.2d 1024, 1028 (6th Cir. 1990). In this case, while Plaintiff seeks to have the opinions of agency psychiatrist Dr. Lamb given more deference likely because they are more restrictive, the ALJ was not required to do so. Upon review of the record herein, the Court finds substantial evidence supports the ALJ's mental RFC determination. Two additional matters deserve brief comment. First, Plaintiff argues as part of his appeal that the ALJ failed in his duty to fully and fairly develop the record. While the ALJ certainly has the obligation to develop a full and fair record, the ALJ does not act as claimant's counsel. *See Duncan v. Secretary*, 801 F.2d 847, 855-56 (6th Cir. 1986); *see also Born v. Secretary*, 923 F.2d 1168, 1172 (6th Cir. 1990). Before a remand is required, there must be a clear showing of prejudice before it is found that a claimant's right to due process has been violated so as to compel a remand on that basis. *Duncan*, 801 F.2d at 856. As stated by the Commissioner, it is insufficient for Plaintiff to simply argue that the ALJ should have fully

developed the record, rather he must demonstrate some prejudice in order to successfully assert a violation of due process. Although Plaintiff was represented by a non-attorney before the ALJ, he has failed demonstrate the prejudice which would necessitate a remand. Because the record was sufficient to permit the ALJ to make his RFC decision, no additional reports or opinions were necessary. Thus, the ALJ's failure to request additional information was not reversible error.

In his response to Commissioner's motion for summary judgment, Plaintiff cites this Court's unpublished decision in *Tabitha Bentley v. Commissioner*, Pikeville Civil No. 05-175-DLB, for the proposition that the ALJ must provide some explanation for the weight given to agency sources. While the statement of law set forth in *Bentley* is correct, as an *unpublished* decision, it is *not* controlling. In view of the large volume of social security cases handled by the undersigned, the results in one case are not meant to have controlling authority over other social security appeals. However, even if *Bentley* were controlling, this case is not one, like *Bentley*, where the ALJ failed to discuss Dr. Lamb's opinions in his decision. Therefore, Plaintiff's reliance on *Bentley* is misplaced.

### III.  CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. # 10) be, and is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. # 11) be, and is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

Dated this 30th day of March, 2007.



Signed By:
*David L. Bunning*
United States District Judge

G:\DATA\SocialSecurity\MOOs\7-06-70-MullinsMoo.wpd